## APPEAL OF CHARLES M. MONROE STATIONERY CO.

Docket No. 950.   Submitted October 8, 1925.   Decided November 18, 1925.

Temporary conditions limiting use of trade-marks and trade names will not support a deduction for obsolescence or loss of useful value.

*A. Evan Hughes, Esq.*, for the taxpayer.
*Briggs G. Simpich, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and ARUNDELL.

This is an appeal from the determination of a deficiency in income and profits taxes for the years 1918 and 1919 in an amount less than $10,000. The deficiency arises from the refusal of the Commissioner to permit the taxpayer to deduct $25,000 for the alleged loss of useful value of intangibles for the year 1918. It is not clear from the pleadings and testimony given at the hearing whether

the taxpayer is relying entirely on the alleged loss of useful value of its trade names and trade-marks, or whether it desires to secure deduction spread over several years by an allowance in the nature of obsolescence. In view of the conclusion reached in the opinion, it does not become material to determine this point.

### FINDINGS OF FACT.

The taxpayer is a Missouri corporation with its principal place of business in St. Louis. It was organized more than 20 years ago with a capital stock of $100,000, fully paid for in cash.

It was organized for the purpose of taking over the stationery business of Charles M. Monroe. For this business it paid $100,000, of which amount $75,000 was paid for the stock of stationery owned by Monroe and $25,000 was paid for certain trade-marks and trade names, the most well known of which was the trade name "Monroe Doctrine." The trade names and trade-marks were worth, on March 1, 1913, not less than their cost. The business of the taxpayer was that of a wholesale dealer in stationery, including such articles as paper, pamphlets, pen points, pencils, and toothbrushes. The sales were made primarily in Missouri, Kansas, and Illinois. The sales were made by regularly employed traveling salesmen and through mail orders. The goods sold on mail order carried the above-mentioned trade names.

In 1918 the taxpayer was unable to place orders for merchandise that bore the company's trade names, for the reason that the manufacturers, who were then operating under the regulations of the War Industries Board, refused to accept such orders. During the years in question the company continued to sell merchandise on hand bearing the company's trade-marks and trade names, and the regulations of the War Industries Board did not in anywise restrict such sales. Some of the retail stores which had purchased articles bearing the company's trade names were selling those goods to the public. The turnover on some of the goods was very rapid and some goods took a year or longer to be turned. The restrictions of the War Industries Board on the manufacture of goods were removed immediately after the Armistice and goods were available to the taxpayer within six months' time. The company did not attempt to revive its mail-order business immediately after the war, but devoted its attention entirely to its regular wholesale business. Before 1924 the company reestablished its mail-order business and is now selling goods through that channel bearing the trade-marks and trade names formerly used by it.

### DECISION.

The determination of the Commissioner is approved.

ARUNDELL: Through the mail-order department of its business the taxpayer sold certain trade-marked articles. In 1918 it was unable to place orders for such goods, due to certain restrictions placed on the manufacturers by the War Industries Board. It is not apparent from any evidence presented to us that the regulations of the War Industries Board specifically prohibited the manufacture of the articles marked in the manner desired by the taxpayer. It merely experienced one of the many difficulties which confronted business due to the war emergency. We can but regard this condition as temporary. The taxpayer was not prevented from selling such trade-marked goods as it had on hand and, in fact, it did continue to trade in them during the years in controversy.

A temporary condition which may have prevented the taxpayer from securing merchandise in its business can not offer a basis for permitting a deduction for obsolescence or loss of useful value of its trade-marks or trade names. The fact that the company is now using them serves to emphasize the fact that the claimed deduction should not be allowed.